[Civ. No. 36690. First Dist., Div. Four. Jan. 23, 1976.]

CITY OF HAYWARD et al., Plaintiffs and Appellants, v.
UNITED PUBLIC EMPLOYEES, LOCAL 390, SERVICE
EMPLOYEES INTERNATIONAL UNION, AFL-CIO,
Defendant and Respondent.

**COUNSEL**

John W. Scanlon, City Attorney, and Myron A. Johnson, Assistant City Attorney, for Plaintiffs and Appellants.

Raymond J. LaJeunesse, Jr., James Newton Wilhoit III, Littler, Mendelson & Fastiff and Maureen McClain as Amici Curiae on behalf of Plaintiffs and Appellants.

Van **Bourg, Allen, Weinberg,** Williams & Roger, Victor J. Van Bourg and David **A. Rosenfeld** for Defendant and Respondent.

**OPINION**

**CHRISTIAN, J.**—The City of Hayward and its city manager appeal from a judgment declaring that an "agency shop" agreement between the city and respondent United Public Employees, Local 390, is lawful.

Respondent (hereinafter "the Union") is a labor organization affiliated with the Service Employees International Union, AFL-CIO; certain. employees of the city are members of the Union. On July 11, 1972, the Union and the city entered into a "Memorandum of Understanding," whereby the city recognized the Union as representing a majority of the employees in the city's maintenance and operations unit.

The agreement covered wages, hours, and other terms and conditions of employment, about which there is no controversy. A dispute arose, however, over the validity of section 1.02 of the agreement, which provides that, although employees are not to be required to join the Union, all employees in the maintenance and operations unit, including nonmembers of the Union, "shall, as a condition of continued employment, pay to the union an amount of money equal to that paid by other employees in the appropriate unit who are members of the union, which shall be limited to an amount of money equal to the union's usual and customary initiation and monthly dues."

■ Except as may be authorized by statute, public employees have no right to bargain collectively with the employing agency. (*Sacramento County Employees Organization, Local 22 etc. Union* v. *County of Sacramento* (1972) 28 Cal.App.3d 424, 429 [104 Cal.Rptr. 619]; *City of San Diego* v. *American Federation of State etc. Employees* (1970) 8 Cal.App.3d 308, 310 [87 Cal.Rptr. 258].) In 1961, California became one of the first states to create a right on the part of government employees to organize and to confer with management as to the terms and conditions of their employment.[1] Another enactment, the Meyers-Milias-Brown Act (Gov. Code, §§ 3500-3510 [hereinafter "MMBA"]) has created certain additional rights of organization in employees of municipalities and local

---

[1]The George Brown Act, now Government Code sections 3525-3536, still governs relations between the state and its employees.

agencies, and authorized representatives of labor and management to enter into written agreements for presentation to the governing body. (Gov. Code, §§ 3505-3505.1.)[2]

The memorandum of understanding entered into by the parties was negotiated by means of procedures which conform to the MMBA. The sole question presented is whether the MMBA permits the creation of an agency shop in an agency of local government. An agency shop agreement is to be distinguished from a union shop agreement, which conditions the continuance of an employee's job on union membership; a union shop is prohibited by statute in public employment. (§ 3502.) In an agency shop, union membership is not a condition of employment, but all employees, including those who do not choose to join the union, must pay union dues. The MMBA does not explicitly refer to agency shop agreements; no reported decision has previously addressed the issue of the legality of this type of agreement.

Section 3502 provides: "Except as otherwise provided by the Legislature, public employees shall have the right to form, join, and participate in the activities of employee organizations of their own choosing for the purpose of representation on all matters of employer-employee relations. Public employees also shall have the right to refuse to join or participate in the activities of employee organizations *and shall have the right to represent themselves individually in their employment relations with the public agency.*" (Italics added.)

Section 3506 prohibits both public agencies and employee organizations from interfering with, intimidating, restraining, coercing or discriminating against public employees "because of their exercise of their rights under Section 3502." ▮ The freedom of choice provisions of each of these sections must be construed as prohibiting the extraction of union dues, or their equivalent, as a condition of continued employment. Otherwise the statutory right of employees to represent themselves would be defeated.

The trial judge did not address either of these sections; instead, he found that the agency shop provision was a "reasonable rule or regulation" adopted pursuant to the authority conferred by section 3507.

Section 3507 provides:

[2]Unless otherwise indicated, all statutory references hereinafter are to the Government Code.

"A public agency may adopt reasonable rules and regulations after consultation in good faith with representatives of an employee organization or organizations for the administration of employer-employee relations under this chapter (commencing with Section 3500).

"Such rules and regulations may include provisions for (a) verifying that an organization does in fact represent employees of the public agency (b) verifying the official status of employee organization officers and representatives (c) recognition of employee organizations (d) exclusive recognition of employee organizations formally recognized pursuant to a vote of the employees of the agency or an appropriate unit thereof, subject to the right of an employee to represent himself as provided in Section 3502 (e) additional procedures for the resolution of disputes involving wages, hours and other terms and conditions of employment (f) access of employee organization officers and representatives to work locations (g) use of official bulletin boards and other means of communication by employee organizations (h) furnishing nonconfidential information pertaining to employment relations to employee organizations (i) such other matters as are necessary to carry out the purposes of this chapter.

"Exclusive recognition of employee organizations formally recognized as majority representatives pursuant to a vote of the employees may be revoked by a majority vote of the employees only after a period of not less than 12 months following the date of such recognition.

"No public agency shall unreasonably withhold recognition of employee organizations."

The trial judge reasoned that the agency shop provision could be lawfully enacted under section 3507 because "(a) it obligates the Union to represent *all* employees, (b) it requires nonmembers to share the cost of the benefits which such representation is intended to provide, and (c) it clearly relates to the administration of employer-employee relationships." He recognized the inconsistency of the provision with the employees' statutorily guaranteed freedom of choice, but reasoned that the right of the individual should be subordinated to a policy in furtherance of collective bargaining "as a vehicle for improving employment relationships and avoiding the harsh consequences of labor disputes involving public services."

■ Courts must, if possible, harmonize statutes, reconcile seeming inconsistencies and construe them to give force and effect to all provisions thereof. (*Hough* v. *McCarthy* (1960) 54 Cal.2d 273, 279 [5 Cal.Rptr. 668, 353 P.2d 276].) A court may not add to or detract from a statute or insert or delete words to accomplish a purpose that does not appear on its face or from its legislative history. (*Estate of Simmons* (1966) 64 Cal.2d 217, 221 [49 Cal.Rptr. 369, 411 P.2d 97].)

The MMBA was enacted to promote "full communication between public employers and their employees by providing a reasonable method of resolving disputes regarding wages, hours, and other terms and conditions of employment . . . ." (§ 3500.) It was not intended to supersede existing systems for the administration of employer-employee relations in the public sector, but to strengthen such systems by improving communication. *(Ibid.)*

It is argued that an agency shop agreement is a reasonable method of resolving labor disputes and that, since it is not specifically prohibited, it should be held permissible under the MMBA. But that construction would render the provisions of sections 3502 and 3506 meaningless. Section 3502 implicitly recognizes that employees may choose to join or participate in different organizations. (See, e.g., *Sacramento County Employees Organization, Local 22 etc. Union* v. *County of Sacramento, supra,* 28 Cal.App.3d 424.) It also confers upon each employee the right not to join or participate in the activities of any employee organization. Section 3506 not only prohibits management from interfering with an employee's section 3502 rights, but also imposes the same ban on employee organizations.

■ Without common law collective bargaining rights, public employees enjoy only those rights specifically granted by statute. Statutes governing the labor relations of other public employee groups indicate that when the Legislature has authorized union security devices, it has done so with explicit language. Certain public transit district employees have been granted extensive collective bargaining rights, including the right to contract for a closed or union shop. (See, e.g., Pub. Util. Code, §§ 25051-25057.) The labor relations of teachers and other school district employees have been governed by the Winton Act. (Ed. Code, §§ 13080-13090.) Sections 13082 and 13086 of that act contain provisions paralleling sections 3502 and 3506 of the MMBA. The Winton Act has never been construed to authorize an agency shop. However, legislation

recently enacted will repeal the Winton Act as of July 1, 1976, and add section 3540 et seq. to the Government Code. (Stats. 1975, ch. 961.)

Under the new law, school district employees still have the right to refuse to join or participate in the activities of employee organizations and the right to represent themselves in their employment relations with the school district *when no exclusive representative has been recognized.* (§ 3543.) When a majority organization is recognized as the exclusive representative pursuant to the prescribed procedures (§§ 3544-3544.9), employees may no longer represent themselves. (§ 3543.) The agency shop is explicitly authorized as an organizational security device (§ 3540.1, subd. (i)) subject to certain limitations. (§§ 3546-3546.5.) Although the MMBA has been amended from time to time since its enactment, the Legislature has never modified the language of sections 3502 and 3506 nor added provisions limiting or enlarging the rights created therein.

Those rights cannot reasonably be reconciled with an agency shop provision. The forced payment of dues or their equivalent is, at the very least, "participation" in an employee organization. Practically, it would have the effect of inducing union membership on the part of unwilling employees. While increased participation and membership is a legitimate goal of labor organizations, coercion toward that end is forbidden by statute. Such union security devices as the agency shop must await authorization by the Legislature.

The courts of other states having similar statutes recognizing the right of a public employee not to join or participate in an employee organization have held the agency shop to be unlawful. (See *Smigel* v. *Southgate Community School District* (1972) 388 Mich. 531 [202 N.W.2d 305]; *New Jersey Turnpike Employees' Union, Local 194* v. *New Jersey Turnpike Authority* (1973) 123 N.J.Super. 461 [303 A.2d 599], affd. (1974) 64 N.J. 579 [319 A.2d 224]; *Farrigan* v. *Helsby* (1971) 68 Misc.2d 952 [327 N.Y.S.2d 909], affd. (1973) 42 App.Div. 265 [346 N.Y.S.2d 39]; *Pennsylvania Labor Relations Board* v. *Zelem* (1974) 329 A.2d 477.) Apparently, only Rhode Island has held that there is a common law right to include an agency shop provision in a collective bargaining agreement. (*Town of N. Kingstown* v. *North Kingstown Teach. Assn.* (1972) 110 R.I. 698 [297 A.2d 342, 344-345] [statute merely gave teachers the right "to join or to decline to join" any employee organization].)

This conclusion is further supported by a comparison with federal statutes. Recognizing that many state labor enactments have followed federal models, California courts have often looked to interpretations of federal labor legislation when construing similar state statutes. (E.g., *Fire Fighters Union* v. *City of Vallejo* (1974) 12 Cal.3d 608, 615-617; *Social Workers' Union, Local 535* v. *Alameda County Welfare Dept.* (1974) 11 Cal.3d 382, 391; *Englund* v. *Chavez* (1972) 8 Cal.3d 572, 589-590 [105 Cal.Rptr. 521, 504 P.2d 457]; *Service Employees' Internat. Union, Local No. 22* v. *Roseville Community Hosp.* (1972) 24 Cal.App.3d 400, 408-409 [101 Cal.Rptr. 69].) The National Labor Relations Act, 29 United States Code section 151 et seq. (hereinafter "NLRA"), contains provisions similar to sections 3502 and 3506 of the MMBA with one major difference. Section 7 of the federal act provides: "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title." (29 U.S.C. § 157.) Sections 8(a)(1) and 8(a)(3) make it unfair labor practices for an employer to threaten, restrain, or coerce employees in the exercise of their section 157 rights or to encourage or discourage union activity by discrimination in employment *except* for union shop agreements. (*Id.,* §§ 158(a)(1), (a)(3).) The Supreme Court has held that, without the express provisos in sections 7 and 8(a)(3), conditioning employment upon union membership would be an unfair labor practice. (*Retail Clerks* v. *Schermerhorn* (1963) 373 U.S. 746, 756 [10 L.Ed.2d 678, 685, 83 S.Ct. 1461].) The court has further held that the agency shop is the practical equivalent of the union shop. (*Id.,* at p. 751; *Labor Board* v. *General Motors* (1963) 373 U.S. 734, 743 [10 L.Ed.2d 670, 676, 83 S.Ct. 1453].)

The provisos permitting union security arrangements were enacted by Congress in 1935 and 1947. Sections 3502 and 3506 of the MMBA were not enacted until 1961, and major revisions were made in 1968. It is reasonable to infer that the California Legislature was aware of the analogous provisions of the NLRA, and the construction thereof, and chose not to permit the agency shop in public employment in California. (Cf. *Fire Fighters Union* v. *City of Vallejo, supra,* 12 Cal.3d 608 at pp. 615-617.)

The judgment is reversed with directions to enter a new judgment declaring the agency shop provisions of the agreement to be unlawful.

Caldecott, P. J., and Emerson, J.,* concurred.

Respondent's petition for a hearing by the Supreme Court was denied April 15, 1976. Tobriner, J., was of the opinion that the petition should be granted.

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.